**WO**                                                                                             SC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karl Louis Guillen, | ) No. CV 08-1279-PHX-MHM (LOA) |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Gerald Thompson, et al., | ) |
| Defendants. | ) |

Plaintiff Karl Louis Guillen, who is confined in the Arizona State Prison Complex-Lewis, Rast Unit, in Buckeye, Arizona, filed a *pro se* motion for leave to exceed the page limit for his civil rights complaint brought pursuant to 42 U.S.C. § 1983. (Doc.# 3.)[1] On August 7, 2008, the Court denied the motion, but granted Plaintiff thirty days within which to file a complaint on the court-approved form and in compliance with the instructions for completing the form. (Doc.# 9.) On September 2, 2008, Plaintiff filed a motion requesting a 20-day extension of time to comply with that Order. (Doc.# 10.) On September 8, 2008, he filed a First Amended Complaint. (Doc.# 11.) Plaintiff later filed a motion inquiring about the status of the case. (Doc.# 12.) The Court will grant Plaintiff's request for an extension of time to the extent that his First Amended Complaint will be deemed timely filed and will grant his request for status to the extent set forth herein. (Doc.# 10, 12.) The Court will order Defendants Schriro and Macabuhay to answer Count I of the First Amended

---

[1] "Doc.#" refers to the docket number of filings in this case.

**TERMPSREF**

1 Complaint and will dismiss the remaining claims and Defendants without prejudice.

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

## II. First Amended Complaint

Plaintiff alleges ten counts. He sues the following individuals, who are all employed by the Arizona Department of Corrections (ADC): Director Dora Schriro; Lewis Complex Warden John Palosaari; Deputy Wardens Gerald Thompson and Robert Curran; ADC Legal Access Monitor Darrell Johnson; Rast Unit Lieutenant Paula Berger; Lewis Complex physician Ronolfo Macabuhay; ADC Head of Chaplaincy Mike Linderman; Lewis Complex Head of Chaplaincy Kingsland; Rast Unit Chaplain Herman; Rast Unit Sergeants Webb, Smith, Parsons, and Zavala; Rast Unit Correctional Officers Breummer, Mendoza, Hatfield, Cooper, Rios, Butryn, Kocho, and Coleman; Lewis Complex Mail and Property Correctional Officers Sikes and Johnson; and several John and Jane Does.

## III. Failure to State a Claim

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

### A. Doe Defendants

Plaintiff sues several John and Jane Doe Defendants. Generally, the use of

1  anonymous type appellations to identify defendants is not favored. Rule 10(a) of the Federal
2  Rules of Civil Procedure requires the plaintiff to include the names of the parties in the
3  action. As a practical matter, it is impossible in most instances for the United States Marshal
4  or his designee to serve a summons and complaint or amended complaint upon an
5  anonymous defendant.

6  The Ninth Circuit has held that where identity is unknown prior to the filing of a
7  complaint, the plaintiff should be given an opportunity through discovery to identify the
8  unknown defendants, unless it is clear that discovery would not uncover the identities, or that
9  the complaint would be dismissed on other grounds. Wakefield v. Thompson, 177 F.3d
10 1160, 1163 (9th Cir. 1999) (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)).
11 Plaintiff may use the discovery process to obtain the names of the persons whom he believes
12 violated his constitutional rights. If Plaintiff discovers the identities of the fictitiously-named
13 defendants through the discovery process, or otherwise, he may seek leave of Court to amend
14 his First Amended Complaint to name these individuals.

15  **B.  Count II**

16  In Count II, Plaintiff alleges that Schriro's current Inmate Legal Access Policy has
17 "frustrated Plaintiff's ability to raise a new claim" under Apprendi v. New Jersey, 530 U.S.
18 466, 488-90 (2000), thereby violating his constitutional right of access to the courts. Plaintiff
19 bases Count II on the following facts: In April 2008, Defendants Thompson, Bruemmer, and
20 Yielding restricted Plaintiff's access to the law library to three hours per week "despite a
21 pending court deadline under the AEDPA." (Doc.# 11 at 4.) In August 2008, Defendant
22 Darrell Johnson directed Rast Unit officials only to allow Plaintiff access to the law library
23 for one period a week, although Plaintiff had two court deadlines.

24  The right of meaningful access to the courts prohibits state officials from actively
25 interfering with an inmate's attempt to prepare or file legal documents. Lewis v. Casey, 518
26 U.S. 343, 350 (1996). That right, however, only encompasses the ability to bring petitions
27 or complaints to federal court and not to discover or even effectively litigate such claims
28 once filed with a court. Id. at 354; see also Cornett v. Donovan, 51 F.3d 894, 899 (9th Cir.

1 1995) ("The right of access is designed to ensure that a habeas petition or civil rights complaint of a person in state custody will reach a court for consideration.") The right "guarantees no particular methodology but rather, the conferral of a capability--the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis, 518 U.S. at 356. Further, the denial of access to a paralegal or use of a law library is not actionable if there is no claim of prejudice to an existing or future legal action. Id. at 351-53. That is, an inmate must establish that he suffered an "actual injury" when he alleges that he was denied access to a paralegal or a law library. See Vandelft v. Moses, 31 F.3d 794, 797 (9th Cir. 1994). An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim." Lewis, 518 U.S. at 348. In other words, a plaintiff must allege facts to support that a defendant's conduct prevented him from bringing to court a non-frivolous claim that he wished to present. Id. at 351-53.

Plaintiff fails to allege facts to support that any Defendant denied him the ability to file any contemplated challenge in state or federal court. Plaintiff merely alleges that his law library access was limited; he does not allege that he was prevented from filing an initial pleading. Plaintiff also fails to identify any court-ordered deadlines with which he was unable to comply as a result of limited law library time. In addition, Plaintiff fails to allege facts to support that he suffered an actual injury, i.e., actual prejudice to contemplated or existing litigation. For these reasons, he fails to state a claim for denial of access to the courts in Count II.

**C.    Count III**

In Count III, Plaintiff alleges that Defendants Schriro, Palosaari, Thompson, Yielding, Kingsland, Herman, and Linderman violated his right to exercise his religion by: (1) blocking access to catalogs from which he "is required to purchase religious supplies"; (2) denying him the ability to purchase non-flammable, naturally scented holy/anointing oils; (3) denying space for worship comparable to those afforded other faiths; (4) denying time to conduct ceremonies; (5) limiting "ceremonial" access to an hour every other week

depending upon security and chaplain availability; (6) denying him turnout if he is the only Wiccan inmate who wishes to attend, after having previously divided Wiccan inmates into two small groups; (7) denying access to supplies permitted under ADC policies through delay and inconsistent application of procedures; and (8) disrupting ceremonies by hazing and handling ceremonial items.  Plaintiff also asserts that Defendants' denial of supplies has prevented him from being able to exercise basic tenets of his faith, ritual, and daily purification in or out of his cell.[2]

Prisoners retain the First Amendment right directing that no law shall prohibit the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Henderson v. Terhune, 379 F. 3d 709 (9th Cir.2004).  To state a First Amendment, free-exercise-of-religion claim, a plaintiff must allege that a defendant burdened the practice of plaintiff's religion by preventing him from engaging in a sincerely held religious belief and that the defendant did so without any justification reasonably related to legitimate penological interests.  Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008).[3]  To merit protection under the free exercise clause of the First Amendment, a religious belief must be sincerely held and not rooted in purely secular philosophical concerns.  Malik v. Brown, 16 F.3d 330, 332 (9th Cir. 1994), supplemented, 65 F.3d 148 (9th Cir. 1995).  Although the validity of religious beliefs cannot be questioned, the sincerity of the person claiming to hold such beliefs can be examined. United States v. Rasheed, 663 F.2d 843, 846 (9th Cir. 1981) (citing United States v. Seeger, 380 U.S. 163, 185 (1965)).  The question is whether the belief is sincere and held

---

[2] Plaintiff does not allege when, how, or by whom he was denied supplies nor does he identify the supplies at issue.

[3] Regulations that impinge on the First Amendment right to free exercise may be upheld only if they are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987). This determination requires analysis of four prongs: (1) there must be a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether there are alternative means of exercising the right that remain open to inmates; (3) the impact accommodation of the right will have on guards and other inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives. Turner, 482 U.S. at 90.

with the strength of traditional religious convictions. United States v. Ward, 989 F.2d 1015, 1018 (9th Cir. 1992).

The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc-2000cc-5, prohibits the government from imposing a substantial burden on the religious exercise of a confined person, unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). "[A] 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005) (quotations omitted). An inmate's religious exercise is substantially burdened "'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his belief.'" Id.

Plaintiff makes only conclusory and vague assertions that various Defendants interfered with his religious rights. He fails to allege the circumstances, including when, where, how, and by whom, his religious rights were violated. For that reason, he fails to state a claim.

**D.     Count IV**

In Count IV, Plaintiff alleges retaliation. To state a viable constitutional claim for retaliation, a plaintiff must allege that a defendant acting under color of law took adverse action against him because he engaged in protected conduct, that the adverse action was not narrowly tailored to advance legitimate correctional goals, and that the adverse action chilled the plaintiff's exercise of his First Amendment rights or caused him to suffer more than minimal harm. Rhodes v. Robinson, 408 F.3d 559, 567-58 (9th Cir. 2005); see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate to show that (1) a prison official acted in retaliation for the exercise of a constitutionally-protected right, and (2) the official's act "advanced no legitimate penological interest"). An inmate may also state a constitutional violation where he alleges that a grievance was denied in retaliation for exercising a constitutionally-protected right, see Bradley v. Hall, 64 F.3d 1276,

1   1279 (9th Cir. 1995), or in retaliation for filing a grievance, <u>Valandingham v. Bojorquez</u>, 866
2   F.2d 1135, 1138 (9th Cir. 1989). An inmate does not, however, have a protected liberty
3   interest in prison grievance procedures because there is no free-standing constitutional right
4   to a grievance process. <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir. 1996); <u>Adams</u>
5   <u>v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994); <u>Buckley v. Barlow</u>, 997 F.2d 494, 493 (8th Cir. 1993)
6   (*per curiam*); <u>Mann v. Adams</u> , 855 F.2d 639, 640 (9th Cir. 1988).

Plaintiff's claim of retaliation is based upon the following facts: In March 2008, Plaintiff filed informal grievances and informed Bob Williams, an investigator in the Lewis Complex Criminal Investigations Unit, about "photographic evidence concerning a[nother inmate's] rape that took place" in Rast Unit in 2007, which was stored on a computer used for the Rast Unit newsletter. (Doc.# 11 at 5B.) On April 1, 2008, Plaintiff was moved into a segregated building for former gang members. On April 3-4, 2008, Berger deleted the photographic rape evidence from the computer used for the Unit's newsletter. Plaintiff informed Thompson, Yielding, Berger, Hatfield, Webb, and Schriro about the "attempted cover-up." (<u>Id.</u>) He also informed Bob Williams.

On April 5, 2008, Thompson, Yielding, and Berger "attempted" to move an unidentified assaultive inmate into Plaintiff's new cell, knowing that the inmate would endanger Plaintiff's life. (<u>Id.</u>) The same day, Yielding and Berger threatened Plaintiff with "all day in the sun ("cages") unless he moved into a cell with another [unidentified] inmate who represented a dangerous threat to Plaintiff." (<u>Id.</u>) On April 6, Thompson, Yielding, Berger, and Hatfield terminated Plaintiff's job as the Rast Unit editor, despite the lack of disciplinary charges or bad performance. Between April 1-15, 2008, Plaintiff filed formal grievances regarding unspecified issues raised in this First Amended Complaint.

On April 24, 2008, unknown staff acting under the supervision of Thompson, Yielding, and Berger searched Plaintiff's cell "in a harassing and unauthorized non-sanctioned manner." (<u>Id.</u>) The same day, Plaintiff was placed on report by Officer Webb for using his toilet.

At midnight on May 9, Defendant Cooper seized Plaintiff's legal and personal

**TERMPSREF**                                      - 7 -

1  property, which was held until May 12, as part of a property inventory conducted on behalf
2  of Thompson, Yielding, and Berger.  The next day, Cooper and Defendant Butryn placed
3  Plaintiff on report for unknown disciplinary charges and Cooper told Plaintiff that he was
4  under investigation.  The unknown charges were eventually dismissed.  On May 14,
5  Thompson, Berger, and Yielding sent Defendants Rios, Kocho, and Parsons to search
6  Plaintiff's cell and, allegedly, to break his typewriter, which he was permitted to have as an
7  ADA accommodation.  On May 21, 2008, Thompson, Yielding, Smith, and Hatfield moved
8  an unidentified inmate, who was a documented threat to Plaintiff's safety, from SMU I into
9  Plaintiff's living area.

10  In June 2008, Thompson and Palosaari denied in part Plaintiff's visitation request for
11  a visitor from Italy, although such permission had been granted in previous years.  On June
12  20, 2008, Grievance Co-ordinator Breummer told Plaintiff when he turned in a grievance
13  appeal that, "I thought we broke your typewriter?  Someone needs to break it."  (Id. at 5C.)
14  In July 2008, Thompson, Hatfield, Smith, Berger, and Yielding moved an unidentified
15  inmate into the cell next to Plaintiff's, knowing the inmate was a threat to Plaintiff.  From
16  April to August 2008, Mendoza, Breummer, Thompson, Yielding, Palosaari, and Schriro
17  "subverted" the grievance process by failing to respond to Plaintiff's non-frivolous
18  complaints.  (Id.)

19  Plaintiff appears in part to contend that various Defendants retaliated against him for
20  reporting the location of evidence allegedly relevant to the rape of another inmate.  The right
21  to report the location of evidence of a crime is not constitutionally protected.  Plaintiff
22  otherwise appears to allege that Defendants retaliated against him for filing grievances.
23  Plaintiff fails, however, to allege facts to support that any of the allegedly retaliatory actions
24  were motivated by the filing of grievances.  Rather, Plaintiff merely asserts that various acts
25  of various Defendants were retaliatory.  He fails to allege facts to support any connection
26  between the filing of grievances and the allegedly retaliatory actions.  For these reasons,
27  Plaintiff fails to state a claim for retaliation in Count IV.
28  /   /   /

### E.     Counts V and VI

In Count V, Plaintiff alleges that he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment based on the facts described in Count IV. In Count VI, he alleges that Thompson, Hatfield, Smith, Schriro, Yielding, and Berger failed to protect him based on the facts alleged in Count IV.

Under the Eighth Amendment, punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). Only deprivations denying the minimal civilized measure of life's necessities, however, are sufficiently grave to violate the Eighth Amendment. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). These are "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." Rhodes, 452 U.S. at 348. Prison officials must also take reasonable measures to guarantee the safety of inmates and officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). To state a claim for unconstitutional conditions or failure to protect, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks. Farmer, 511 U.S. at 834; Frost, 152 F.3d at 1128; Redman v. County of Los Angeles, 942 F.2d 1435, 1443 (9th Cir. 1991) (*en banc*). To adequately allege deliberate indifference, a plaintiff must allege facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety. Farmer, 511 U.S. at 837. That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." Farmer, 511 U.S. at 837; Frost, 152 F.3d at 1128; Redman, 942 F.2d at 1442.

Plaintiff asserts that Defendants damaged his property, searched his cell, denied him special visitation privileges, brought false disciplinary charges that were ultimately dismissed, mishandled his grievances, and terminated his prison job. These actions neither rise to the level of constitutional violation, nor rendered Plaintiff's conditions of confinement

1  unconstitutional. Inmates do not have a constitutional right to unfettered visitation. See
2  Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989); Keenan v. Hall, 83 F.3d
3  1083, 1092 (9th Cir. 1996). Inmates also have no constitutional right to enjoy a particular
4  security classification or housing. See Meachum v. Fano, 427 U.S. 215, 224-25 (1976) (no
5  liberty interest protected by the Due Process Clause is implicated in a prison's
6  reclassification and transfer decisions); see also Myron v. Terhune, 476 F.3d 716, 718 (9th
7  Cir. 2007). Further, the Supreme Court has held that "while persons imprisoned for crime
8  enjoy many protections of the Constitution, it is also clear that imprisonment carries with it
9  the circumscription or loss of many significant rights," including the Fourth Amendment
10 protection against random searches of individual prison cells. Hudson v. Palmer, 468 U.S.
11 517, 524 (1984) (citing Bell v. Wolfish, 441 U.S. 520, 545 (1979)). In addition, there is no
12 constitutional right to prison employment. Vignolo v. Miller, 120 F.3d 1075 (9th Cir. 1997);
13 Baumann v. Arizona Dep't of Corr., 754 F.2d 841, 846 (9th Cir. 1985). An inmate also does
14 not have a protected liberty interest in prison grievance procedures because there is no free-
15 standing constitutional right to a grievance process. Antonelli, 81 F.3d at 1430; Adams, 40
16 F.3d at 75; Buckley, 997 F.2d at 493; Mann, 855 F.2d at 640. With respect to the damage
17 to Plaintiff's property, where the state makes a meaningful post-deprivation remedy
18 available, neither a negligent, nor an intentional, deprivation of an inmate's property by a
19 state employee violates the inmate's Fourteenth Amendment right to due process. Parratt v.
20 Taylor, 451 U.S. 527, 541 (1981) (negligent); Hudson v. Palmer, 468 U.S. 517, 533 (1984)
21 (intentional). The availability of a common-law tort suit against a state employee constitutes
22 an adequate post-deprivation remedy. Hudson, 468 U.S. at 534-35.

23       Plaintiff also alleges that Defendants celled him with or near known assaultive
24 inmates. He fails to allege facts to support that any of the allegedly assaultive inmates posed
25 a substantial risk of serious physical harm to Plaintiff, nor does he allege facts to support that
26 he was actually injured or that Defendants acted with deliberate indifference to a substantial
27 risk of serious physical harm posed to Plaintiff by allegedly assaultive inmates. For the
28 reasons discussed, Plaintiff fails to state a claim in Counts V or VI.

### F. Count VII

In Count VII, Plaintiff alleges a violation of "equal privileges," which the Court construes as an equal protection claim, based upon the facts described in Count IV. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; see City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). A state practice that interferes with a fundamental right or that discriminates against a suspect class of individuals is subject to strict scrutiny. Massachusetts Bd. of Ret. v. Murgia, 427 U.S. 307, 312 (1976); Hydrick v. Hunter, 466 F.3d 676, 700 (9th Cir. 2006). Absent allegations that he is a member of a suspect class, or that a fundamental right has been violated, a plaintiff must allege facts to support that he has been intentionally treated differently from others who are similarly situated without a reasonable basis therefor. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Conclusory allegations do not suffice. See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265 (1977).

Plaintiff has neither alleged facts to support interference with a fundamental right, nor membership in a suspect class. See Hydrick, 466 F.3d at 700 (convicted sex offenders do not constitute a suspect class); see also Rodriguez v. Cook, 169 F.3d 1176, 1179 (9th Cir. 1999) (indigent inmates are not a suspect class). Plaintiff also fails to allege facts to support that he has been treated differently than similarly-situated individuals. That is, Plaintiff does not allege facts to support that he has been singled out, based on his membership in a suspect class, in any manner. For these reasons, Plaintiff fails to state a claim for violation of his Equal Protection rights.

### G. Count VIII

In Count VIII, Plaintiff alleges that his due process rights were violated based on the facts contained in paragraph 22-23 of Count IV. In paragraph 22, Plaintiff states that in August 2008 he received a second replacement typewriter, which began to malfunction in

the same way as the typewriter allegedly broken by Kocho and Rios on May 14, 2008. He alleges that Sikes and Johnson "processed the typewriter and gave it to Defendant Cooper for delivery." (Doc.# 11 at 5C.) In paragraph 23, Plaintiff alleges that on August 20, 2008, Sikes and Johnson "contrabanded" a book regarding hypnotherapy that Plaintiff purchased through Amazon, despite Plaintiff's compliance with procedures to purchase the book. (Id.) Plaintiff alleges they contrabanded the purchase without any legitimate penological reason.

As stated above, where the state makes a meaningful post-deprivation remedy available, neither a negligent, nor an intentional, deprivation of an inmate's property by a state employee violates the inmate's Fourteenth Amendment right to due process. Parratt, 451 U.S. at 541; Hudson, 468 U.S. at 533. Because Plaintiff has an available common-law tort remedy against prison employees who deprived him of property, he may not sue under § 1983 for violation of his due process rights for damage to the typewriter or contrabanding of the book.

**H.      Count IX**

In Count IX, Plaintiff alleges that Defendants Schriro, Palosaari, Thompson, Yielding, and Curran have denied him "equal privileges," which the Court construes as a claim for violation of his equal protection rights. Plaintiff alleges the following facts in support of this count: he is a former gang member, who was debriefed regarding his former gang affiliation. In March 2008, Defendants created a segregated building in the Rast Unit to hold former gang members who had been debriefed. Defendants also placed more recently debriefed former gang members, who might be "sleeper assassins," into the segregated building. In addition, Defendants threatened inmates in the building with placement in a Special Management Unit (SMU) if they refused to remove other prisoners from their Do Not House With (DNHW) lists. Further, Defendants restricted debriefed inmates from being housed so as to ensure their safety and decrease the likelihood of violence or death under Director's Instruction (DI) 254 and 67. Defendants also continually overrode Plaintiff's classification scores and custody level and thereby limited his ability to participate in programs, services, and activities offered to similarly-situated inmates.

1    As explained above, the Equal Protection Clause of the Fourteenth Amendment
2 provides that a state may not "deny to any person within its jurisdiction the equal protection
3 of the laws." U.S. Const., amend. XIV; see City of Cleburne, 473 U.S. at 439.  A state
4 practice that interferes with a fundamental right or that discriminates against a suspect class
5 of individuals is subject to strict scrutiny.  Massachusetts Bd. of Ret., 427 U.S. at 312;
6 Hydrick, 466 F.3d at 700. Although Plaintiff conclusorily asserts that debriefed former gang
7 members constitute a "suspect class," he is mistaken.  See Nesbit v. Dep't of Public Safety,
8 283 Fed. Appx. 531, 533-34 (9th Cir. 2008) (inmates unaffiliated with a gang but housed
9 with gang members are not a suspect class); see also Meachum, 427 U.S. at 224-25;
10 Hydrick, 466 F.3d at 700 (convicted sex offenders do not constitute a suspect class);
11 Rodriguez, 169 F.3d at 1179 (indigent inmates are not a suspect class).

12   A plaintiff who fails to allege that he is a member of a suspect class or that a
13 fundamental right has been violated may otherwise state a claim if he alleges facts to support
14 that he has been intentionally treated differently from others who are similarly-situated
15 without a reasonable basis therefor.  See Olech, 528 U.S. at 564; Nesbit, 283 Fed. Appx. at
16 533-34.  Conclusory allegations do not suffice.  See Village of Arlington Heights, 429 U.S.
17 at 265.  As noted above, a prisoner does not have a constitutional right to a particular security
18 classification.  See Meachum, 427 U.S. at 224-25;  Hydrick, 466 F.3d at 700; see also
19 Rodriguez, 169 F.3d at 1179; Nesbit, 283 Fed. Appx. at 533-34.

20   Plaintiff fails to allege facts to support that he has been treated differently than other
21 similarly-situated inmates.  Plaintiff makes only conclusory assertions that he has been
22 excluded from being housed pursuant to DI 254 and 67 or that his safety has in been
23 threatened.  Similarly, Plaintiff makes only conclusory assertions that Defendants lack a
24 rational basis for their actions.  For these reasons, Plaintiff fails to state an equal protection
25 violation.

26   **I.    Count X**

27    In Count X, Plaintiff alleges a failure to protect or threats to his safety.  Plaintiff
28 asserts that Defendants "have created an environment in which the risk of sleeper

1  assassination attempts will take place, by removing the buffer zone from newly debriefed
2  STG members," based on the facts alleged in Count IX. (Doc.# 11 at 5G.) As explained
3  above, to state a claim for failure to protect, an inmate must allege facts to support that he is
4  incarcerated under conditions posing a substantial risk of harm and that prison officials were
5  "deliberately indifferent" to those risks. Farmer, 511 U.S. at 834; Frost, 152 F.3d at 1128;
6  Redman, 942 F.2d at 1443. Plaintiff makes only conclusory and speculative assertions that
7  his safety is threatened. He fails to set forth facts to support that he is incarcerated in
8  conditions that pose a substantial risk of harm to him or that Defendants have acted with
9  deliberate indifference to such risk. Accordingly, Count X fails to state a claim.

**IV.     Claim for Which an Answer Will be Required**

In Count I, Plaintiff alleges the following facts: On May 10, 2008, Plaintiff submitted an emergency health needs request (HNR) to Rast Unit medical staff for treatment of post-herpetic neuralgia. Plaintiff began to feel pain, allodynia, and hyperalgesia on April 10, 2008. On May 18, 2008, Dr. Macabuhay told Plaintiff that he could not treat him for more than seven days. Dr. Macabuhay gave Plaintiff an injection for pain that lasted only eight hours and prescribed seven days of tylenol. The same day, Dr. Macabuhay submitted a request for lidocaine patches and referral to a pain clinic for Plaintiff to currently unknown prison personnel.

In July 2007 and 2008, Schriro reduced the medical care contract and eliminated 8 of 10 pharmacies so that "Plaintiff cannot receive appropriate medications as indicated by his ADC medical file from 2004-05." (Doc.# 11 at 3A.) Between May 10 and August 10, 2008, Plaintiff submitted 14 HNRs for treatment of his extreme pain from his post-herpetic neuralgia, which was interfering with his ability to sleep, eat, exercise, and function. "Defendants" were aware that Plaintiff was experiencing tachycardia, elevation of his blood pressure, and had lost 25 lb. as a result of the pain. (Id.) Plaintiff had also been issued "lay-in trays for 10 days" and seven days of pain shots. Further, "Defendants" were aware that in 2005, he was taken to the University of Arizona Pain Clinic to receive an epidural spinal injection to alleviate pain he was then experiencing from a prior flare-up. (Id.) Despite

knowledge of Plaintiff's medical condition and his severe pain from that condition, Schriro restricted Macabuhay's ability to effectively treat Plaintiff's condition for longer than a seven-day increment. Plaintiff alleges that Defendants Macabuhay and Schriro have acted with deliberate indifference to his serious medical condition. Plaintiff adequately alleges a claim for deliberate indifference to his serious medical needs. Defendants Macabuhay and Schriro will be required to respond to Count I.

## V. Warnings

### A. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### B. Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### C. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's motion for an extension of time is **granted** to the extent that his First Amended Complaint is deemed timely filed. (Doc.# 10.)

(2) Plaintiff's motion for status of case is **granted** to the extent set forth herein. (Doc.# 12.)

    (3)    Counts II-X and Defendants Thompson, Berger, Palosaari, Doe, Breummer, Johnson, Kingsland, Herman, Linderman, Hatfield, Webb, Cooper, Butryn, Smith, Rios, Kocho, Parsons, Mendoza, Sikes, Curran, Zavala, and Coleman are **dismissed** without prejudice.

    (4)    Defendants Macubuhay and Schriro must answer Count I. (Doc.# 11.)

    (5)    The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. #11), this Order, and both summons and request for waiver forms for Defendants Schriro and Macubuhay.

    (6)    Plaintiff must complete and return the service packet to the Clerk of Court within 20 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

    (7)    If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(I).

    (8)    The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

    (9)    The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. The Marshal must immediately file requests for waivers that were returned as undeliverable and waivers of service of the summons. If a waiver of service of summons is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

        (a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

  (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10) **A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11) Defendants must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13) This matter is referred to Magistrate Judge Lawrence O. Anderson pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for further proceedings.

DATED this 19th day of December, 2008.

_____
Mary H. Murguia
United States District Judge