**WO** JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karl Louis Guillen,<br><br>    Plaintiff,<br><br>vs.<br><br>Gerald Thompson, et al.,<br><br>    Defendants. | No. CV 08-1279-PHX-MHM (LOA)<br><br>**ORDER** |

Plaintiff Karl Louis Guillen brought this civil rights action under 42 U.S.C. § 1983 against Dora Schriro, Arizona Department of Corrections (ADC) Director, and Ronolfo Macabuhay, Lewis Complex physician (Doc. #11).[1] Before the Court are Plaintiff's two Motions for Preliminary Injunction (PI) (Doc. ##28-29), which the parties have briefed (Doc. ##43, 45).

The Court will deny Plaintiff's motions.

**I.  Background**

Plaintiff initiated this action in July 2008 (Doc. #1), and he submitted his First Amended Complaint on September 8, 2008 (Doc. #11). His claims stem from his confinement in the Arizona State Prison Complex-Lewis, Rast Unit in Buckeye, Arizona (id.

---

[1] Upon screening, the Court dismissed Thompson, Berger, Palosaari, Doe, Breummer, Johnson, Kingsland, Herman, Linderman, Hatfield, Webb, Cooper, Butryn, Smith, Rios, Kocho, Parsons, Mendoza, Sikes, Curran, Zavala, and Coleman as Defendants (Doc. #13).

at 1).² Plaintiff alleged that in April 2008, he began to suffer pain, allodynia, and hyperalgesia (id. at 3).³ He alleged that from May 10 to May 18, he submitted 14 Health Needs Requests (HNRs) for treatment of his extreme pain from postherpetic neuralgia, which Plaintiff described as "constant and unrelenting pain" and "the worst type of pain known to mankind" (id.).⁴ Plaintiff claimed that this pain interfered with his ability to sleep, eat, exercise, and function. Plaintiff averred that when he was finally seen on May 18, Macabuhay informed him that treatment could only be provided for up to 7 days because there was no long-term treatment available (id. at 3-3(A)).

Plaintiff alleged that Defendants were aware that he was experiencing tachycardia, high blood pressure, and severe weight loss due to the pain (id. at 3(A)). Plaintiff further alleged that Defendants were aware that in 2005, Plaintiff was taken to the University of Arizona Pain Clinic for an epidural spinal injection to alleviate pain caused by a prior flare-up. Plaintiff contended that Schriro restricted Macabuhay's ability to effectively treat Plaintiff's condition in part by reducing the medical care contract, which cut medical staff, and by eliminating the majority of pharmacies that provided medication. Plaintiff alleged that both Defendants were deliberately indifferent to his serious medical condition (id.).⁵

On December 22, 2008, the Court screened the amended pleading and ordered service on Defendants (Doc. #13). Service was executed in February 2009 (Doc. ##14-15). The following month, Defendants submitted their Answer (Doc. #22), and the Court issued a Scheduling Order (Doc. #23).

---

²On July 24, 2009, Plaintiff filed a Notice of Change of Address notifying the Court of his transfer to Eyman-Special Management Unit (SMU) I in Florence, Arizona (Doc. #76).

³Allodynia is a condition in which ordinarily nonpainful stimuli evoke pain, and hyperalgesia is extreme sensitivity to painful stimuli. Stedman's Medical Dictionary allodynia and hyperalgesia (27th ed. 2000).

⁴Neuralgia is defined as "pain of a severe, throbbing, or stabbing character in the course of distribution of a nerve." Stedman's Medical Dictionary neuralgia (27th ed. 2000).

⁵This claim was set forth in Count I of Plaintiff's Complaint (Doc. #11 at 3-3(A)). Plaintiff's nine other counts were dismissed for failure to state a claim (Doc. #13).

- 2 -

On May 15, 2009, Plaintiff filed a Motion for Emergency TRO/PI (Doc. #28). He submitted a second Motion for Emergency TRO/PI on May 17 (Doc. #29, docketed May 21, 2009). On June 9, the Court denied Plaintiff's requests for a TRO but ordered Defendants to file a response to the PI requests within 15 days; Plaintiff was permitted 5 days from receipt of the response to file a reply (Doc. #37). On June 25, before a response was filed, the Court received Plaintiff's reply in support of his PI motions; his reply was signed and dated June 17, 2009 (Doc. #43). Plaintiff indicated that he filed his reply early because he does not have "legal access to reply within the Court's 5-day time frames" (id. at 1 n. 1). Also on June 25, Defendants filed their response opposing Plaintiff's request for PI relief (Doc. #45).

## II. PI Motions

### A. Plaintiff's Contentions

In his first PI motion, which is hand-written and barely legible, Plaintiff states that on May 8, 2009, he was placed in isolation without any penological reason or explanation (Doc. #28 at 1). He alleges that officials confiscated his pain and allergy medication (id. at 1). Plaintiff also alleges that Defendants' agents have retaliated against him and threatened to interfere with his access to the courts (id. at 2). He appears to seek a Court order for medication and legal access, including the return of his typewriter (id.).[6]

In his second motion for injunctive relief, which is typewritten, Plaintiff seeks an PI to prevent Defendants or their agents from (1) retaining Plaintiff's legal paperwork, legal books, stamps and mailing materials, (2) continuing his isolation/segregation, (3) keeping him from his original housing location and status, (4) harassing and intimidating him, (5) denying him legal access, and (6) denying him medical and psychiatric treatment (Doc. #29). He also requests that the Court set a show cause hearing on the motion (id.).

In his motion, Plaintiff asserts that on May 7, 2009, Captain B. Wilson threatened him,

---

[6]In his First Amended Complaint, Plaintiff indicated that he was authorized to have a typewriter as an accommodation under the Americans with Disabilities Act (ADA) (Doc. #11 at 5(C)).

- 3 -

and this threat was related to his litigation in this case (id. at 1). Plaintiff submits a supporting memorandum, in which he states that the day after Wilson's threat, Lieutenant M. Obrien told him that "someone high-up wants you to go to the hole" (Doc. #30 at 1). Plaintiff explains that he was taken to the Rast Unit segregation cell, apparently for suspicion of gambling, which Plaintiff states is a minor violation. Plaintiff asserts that he requested linens and his medications for neuralgia, allergies, and asthma (id.; Doc. #29 at 2). He states that he did not receive these items until 4 days later and after he was found in his cell twitching, red, itching and burning, in extreme pain, and in and out of coherence (Doc. #29 at 2). Plaintiff asserts that he was taken by ambulance to the Lewis Complex emergency room on May 12, where he was given an injection for pain and allergy medication but not his pain medication (id.).

Plaintiff alleges that on May 13, he requested his legal paperwork, his typewriter, mailing materials, and his law books (Doc. #30 at 1). He asserts that the next day, he received only his typewriter. Plaintiff claims that he is under threat by physical force, administrative tactics, and false allegations of misbehavior. Plaintiff states that he is a well-behaved inmate with an excellent work history (id.).

Plaintiff expresses deep concern that something is wrong with him because he suffers pain, shaking, and an odd sensation in his head (id. at 2). He states that he has not received a medical check-up or post-emergency evaluation, nor can he get any HNRs to request assistance or another pain shot (id.). And he alleges that he is confined in a cell 24 hours a day, 7 days a week, and he is mentally unstable (Doc. #29 at 5). Plaintiff further states that his phone calls to overseas agents and contact with his attorney have been cut off (Doc. #30 at 2).

With his memorandum, Plaintiff submits copies of pharmacy receipts showing the medications that are being withheld from him, and the copy of an inmate letter referencing his ADA accommodation for a typewriter (id., Attach. 1-2).

**B.   Defendants' Response**

Defendants argue that a PI is not warranted on the grounds that (1) Plaintiff's claim

of retaliation is unrelated to the claims in the First Amended Complaint, (2) Plaintiff failed to exhaust available administrative remedies for his retaliation claim, and (3) Plaintiff has not met the PI standard for injunctive relief (Doc. #45).

In their response, Defendants set forth their version of the facts related to Plaintiff's detention. They state that on May 8, 2009, Plaintiff was placed in Rast Unit detention on a charge of suspected gambling, which they identify as a "felony violation" (id. at 3). Defendants assert that ADC conducted a thorough investigation into this charge including a search of Plaintiff's cell, which uncovered physical evidence of gambling activities; interviews with witnesses; and an interview with Plaintiff (id.). Defendants state that Plaintiff received notice of the disciplinary hearing and the evidence to be used against him, and the hearing proceeded on June 2, 2009 (id.). At the hearing, Plaintiff presented evidence, as did the Special Security Unit Officer; Plaintiff was found guilty of running a high-dollar gambling operation (id.). Defendants explain that Plaintiff has appealed that decision and the appeal is currently pending with the Deputy Warden (id. at 4).

Defendants further state that on June 18, 2009, Plaintiff's property was inventoried. This inventory documented that Plaintiff currently possesses 3 boxes of legal documents and supplies, a typewriter, 500 sheets of blank paper, six books and a dictionary, an asthma inhaler, 3 bottles of allergy tablets, 1 bag of Gabapentin, and 2 boxes of Loratadine (id.).[7]

Lastly, Defendants assert that neither Defendant is involved in the day-to-day operations at Plaintiff's housing facility (id. at 4). They state that Macabuhay is a physician without any authority over housing, and Schriro left the ADC in January 2009 (id.).

### *1. Motion Unrelated to Claims in Complaint*

Defendants' first argument is that because the claims raised and the relief sought in Plaintiff's PI motions are unrelated to those in his First Amended Complaint, an injunction should not be granted (id. at 4-5). Defendants assert that Plaintiff has not established a

---

[7]Gabapentin is used to relieve the pain of postherpetic neuralgia, and Loratadine is an antihistamine used to treat allergy symptoms and allergic skin disorders. See www.nlm.nih.gov/medlineplus/druginformation.html.

relationship between the injuries alleged in his PI motions and his claims set forth in the pleading (id. at 5).

### *2. Exhaustion*

Next, Defendants argue that Plaintiff did not grieve the claims in his PI motion as required under the ADC grievance procedure and, therefore, his claims are barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (id. at 6). Defendants proceed to describe the four steps in the ADC grievance procedure in great detail (id. at 6-9). Defendants state that there is a separate Inmate Disciplinary System that governs the disciplinary process (id. at 10). This system includes the disciplinary hearing, a first-level appeal to the Deputy Warden, and a second-level appeal to the Director (id.). Defendants describe in detail the procedures at each of these steps (id. at 10-11).

Defendants contend that to the extent that Plaintiff alleges that Defendants confiscated his property in retaliation, Plaintiff filed a inmate letter about the loss of property—the initial step in the grievance process, but he failed to submit an inmate grievance—the next step in the process (id. at 9). Defendants maintain that because Plaintiff did not proceed past the first step of the grievance procedures, he failed to exhaust his retaliation claim and the Court is precluded from hearing the claim (id. at 9-10).

As to Plaintiff's claims regarding the disciplinary procedures related to the gambling charge, Defendants state that his appeal is still pending; thus, he has not exhausted remedies and cannot bring this claim before the Court (id. at 11).

### *3. PI Standard*

Finally, Defendants contend that Plaintiff has not met the requirements for a PI because he alleges only speculative injury (id. at 12). Defendants further contend that those injuries alleged by Plaintiff have already been cured as demonstrated by Plaintiff's own admission that he received most of his property after 4 days (id. at 13). Defendants note that Plaintiff's copies of medication labels show that Plaintiff is receiving medical treatment (id.). Defendants also argue that Plaintiff admits that he spoke with a nurse about his medical needs, and that the inventory of his property reflects that he has received a supply of

medications (id.).

Within this injury argument, Defendants assert that Plaintiff seeks to alter the status quo but has not met the heightened burden that must be met to warrant a mandatory injunction (id. at 13-14). Defendants conclude that Plaintiff cannot show any real or immediate threat of injury (id. at 14).

Defendants further argue that Plaintiff cannot show a likelihood of success on the merits of his retaliation claim because here, the acts Plaintiff alleges constitute retaliation are related to a legitimate penological goal; namely, detention and disciplinary proceedings in response to a major disciplinary offense (id. at 15).

In support of their opposition, Defendants submit a copy of Department Order (DO) 803, Inmate Disciplinary System (id., Ex. A); copies of the Detention Assignment Checklist and Assignment to Detention forms dated May 8, 2009 (id., Ex. B); the declaration of Richard Fisher, Disciplinary Hearing Officer at the Lewis Rast Unit (id., Ex. C, Fisher Decl. ¶ 3); copies of Plaintiff's disciplinary appeal (id., Ex. D), copies of Plaintiff's May 22 inmate letter and response (id., Ex. E); a copy of the Inmate Property Inventory Log (id., Ex. F); and a copy of DO 802, Inmate Grievance System (id., Ex. G).

### C. Plaintiff's Reply

As stated, Plaintiff filed his reply before receipt of Defendants' response; therefore, the reply does not respond to Defendants' arguments against an injunction.

In his reply, Plaintiff reiterates his medical history and the facts supporting his motion (Doc. #43). He reasserts that he suffers extreme pain, that his heart rate and blood pressure are elevated, and that he fears a stroke or cardiac arrest (id. at 6). Plaintiff states that there has still been no response to his request for mental health assistance (id. at 7). And he alleges that he as been housed in a "hot cell," which exacerbates his pain (id.).[8]

Plaintiff alleges that in February 2009, one of his visitors received threatening e-mails from an unidentified ADC staff member (id. at 8). Plaintiff states that "Defendants have

---

[8]In his accompanying affidavit, Plaintiff describes a "hot cell" as having two walls that receive radiant heat (Doc. #44, Ex. 1, Pl. Aff. ¶ 14).

harassed and threatened Plaintiff's approved visitors with slanderous, libelous, and sexually connotated e-mails" (id. at 12).

Plaintiff also alleges that Lt. Berger began harassing Plaintiff and that Plaintiff's attempts to resolve the harassment problems led to a charge against him for "threatening and intimidating" (id. at 8). Plaintiff states that he was terminated from his position as editor of the inmate newspaper for unknown reasons in March 2009 (id. at 8-9). Plaintiff further states that in May 2009, Captain Wilson, on behalf of Defendants, made threats to Plaintiff related to Plaintiff's discovery requests in this action (id. at 9). And Plaintiff alleges that later that same month, Deputy Warden Owen refused to resolve Plaintiff's grievances (id.).

As to the May 8, 2009 detention incident, Plaintiff alleges that Rast Unit detention officers told Plaintiff that Defendants directed them to withhold Plaintiff's property—even his medications—from May 8-12, 2009 (id.). With respect to the evidence found in Plaintiff's property that allegedly proves gambling, Plaintiff states that this evidence was not found in the initial cell search; rather, it "suddenly" appeared later (id. at 10). Plaintiff alleges that staff did not properly follow the rules for disciplinary proceedings and thereby violated his due process rights (id.).

Plaintiff states that he was denied his medication for 4 days, from May 8-12, 2009 (id. at 6, 8). He also avers that he was denied his ADA accommodation for 6 days, and denied legal files for 22 days (id. at 11). He states that he was unable to call an attorney until June 10, 2009, and that in June, he was told by an officer that Defendants want to confiscate Plaintiff's typewriter (id.). Also, Plaintiff alleges that Defendants have denied Plaintiff meaningful access to a CO III and kept his legal materials, stamps, stationary, and other property (id. at 12). Finally, Plaintiff states that Defendants have denied contact visits for Plaintiff's international visitors, are going to reclassify Plaintiff to a higher custody level based on false disciplinary violations, and have removed him from participation in programs and services (id. at 12-13).

Plaintiff concludes by setting forth the injunctive relief he seeks. In addition to the relief he original sought in his PI motions, Plaintiff adds the following:

- medical and security waivers as needed
- immediate release from stressors of isolation
- medical release procedures (to allow for medical care outside of ADC)[9]
- Plaintiff's reinstatement in all ADC programs, services, and activities
- removal of specific (unidentified) officials from direct supervision of Plaintiff
- injunction against the use of force
- outdoor exercise
- alternative protective segregation at Rast Unit

(id. at 14).

With his reply, Plaintiff submits his own affidavit (Doc. #44, Ex. 1), which is supported by 22 attachments (copies of HNRs, medical records, medical articles, ADC policies, Plaintiff's personal Rast Detention Unit log, and grievances and disciplinary reports) (id., Attachs. A-V); copies of grievances (id., Exs. 2-3); and a copy of Plaintiff's medical release form (id., Ex. 4).

### III. Preliminary Injunction Legal Standard

The purpose of preliminary injunctive relief is to preserve the status quo or to prevent irreparable injury pending the resolution of the underlying claim. Sierra On-line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984). To obtain a preliminary injunction, the movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Defense Council, Inc., 129 S. Ct. 365, 374 (2008). A preliminary injunction is an extraordinary and drastic remedy and "one that should not be granted unless the movant, by a clear showing,

---

[9]Plaintiff subsequently filed a "Notice of Emergency Medical or Medical Furlough Plan of Treatment" (Doc. #69). This treatment plan provides for Plaintiff's parents to transport him from ADC to the University of Arizona Pain Clinic for immediate treatment, after which Plaintiff would reside in Cadine, Italy, where his fiancee and publisher would pay for his care and an Italian Judge would monitor Plaintiff on behalf of ADC and the Court (id. at 1-2).

- 9 -

carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)).

In attempting to establish either eligibility for an injunction or that a party is not entitled to injunctive relief, the parties may rely on developments that postdate the pleadings and pretrial motions. Farmer v. Brennan, 511 U.S. 825, 846 (1994).

**IV. Analysis**

Initially, the Court notes that it will consider only the requests for relief set out in Plaintiff's motions for PI (see Doc. ##28-29); it will not address the additional claims for relief presented for the first time in Plaintiff's reply brief. See Cuevas-Gaspar v. Gonzales, 430 F.3d 1013, 1021 n. 4 (9th Cir. 2005). Plaintiff's original request was for an order directing Defendants to return his legal and mailing materials, to return him to his original housing placement and status, to stop harassing and intimidating him, to stop interfering with his legal access, and to provide him medical and psychiatric treatment (Doc. #29).

**A. PI Requests Unrelated to the First Amended Complaint**

A plaintiff seeking injunctive relief must show "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (affirming denial of a PI request based on alleged retaliatory conduct unrelated to the basis of a prisoner's § 1983 claim). In Devose, the Eighth Circuit explained that preliminary injunctive relief could not be granted "based on new assertions of mistreatment that [were] entirely different from the claim raised and the relief requested" in the complaint. Id. Thus, a court should not grant an injunction "when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." Kaimowitz v. Orlando, 122 F.3d 41, 43 (11th Cir. 1997).

Defendants argue that injunctive relief is not warranted because Plaintiff's PI request relates to claims of retaliation that are not connected to the claims in the underlying complaint, which alleged deliberate indifference to Plaintiff's serious medical needs and

- 10 -

failure to provide adequate medical treatment (Doc. #45 at 5).

Most of the claims raised in Plaintiff's PI motions are not related to Plaintiff's original medical care claims. Rather, he makes new assertions involving retaliation and the confiscation of property, due process in disciplinary proceedings, and denial of access to the courts. Moreover, these new assertions are against individuals who are not parties to this action and, therefore, are not subject to the Court's jurisdiction. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969). For these reasons, injunctive relief is improper. To the extent that Plaintiff seeks injunctive relief for alleged conduct related to retaliation, confiscation of property (including legal materials and mailing supplies), disciplinary proceedings and due process, housing placement and status, harassment and intimidation, and access to the courts, his PI motions will be denied.

### B. PI Requests Related to First Amended Complaint

Those claims in Plaintiff's motion concerning his medication and lack of medical treatment, however, do pertain to the issues in the First Amended Complaint. Plaintiff claims that from May 8-12, 2009, he was placed in isolation and denied his pain medications, asthma inhaler, and allergy medications (Doc. #43 at 5). But in his reply, Plaintiff confirms—repeatedly—that this denial of medications lasted for just those 4 days (id. at 6, 8-9). Plaintiff also avers that on May 12, he received medical treatment, including a pain shot and allergy medication (id. at 6). Further, Defendants present evidence of Plaintiff's property inventory dated June 18, 2009, which shows that Plaintiff has in his possession allergy medications and medicine for his postherpetic neuralgia (Doc. #45, Ex. F).

Considering this evidence, Plaintiff's own statements, and the developments that postdate the filing his PI motions, Farmer, 511 U.S. at 846, the Court finds that an injunction is not warranted. In part, Plaintiff has received the relief he sought. As to his requests for more extensive medical treatment and for mental health treatment, Plaintiff has not presented sufficient facts to demonstrate irreparable harm absent an injunction. To meet the "irreparable harm" requirement, Plaintiff must do more than simply allege imminent harm;

he must demonstrate it. Caribbean Marine Servs. Co., Inc. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988). This requires Plaintiff to demonstrate by specific facts that there is a credible threat of immediate and irreparable harm. Fed. R. Civ. P. 65(b). Mere "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." Caribbean Marine, 844 F.2d at 674-75. Plaintiff's conclusory assertions of imminent danger and fear of health problems are insufficient to make the required showing for injunctive relief.

In addition, since the briefing on the PI motions, Plaintiff has been transferred from the Rast Unit in Buckeye, Arizona, to the SMU I facility in Florence, Arizona (Doc. #76). When an inmate seeks injunctive relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. See Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995). In light of Plaintiff's transfer to a different facility in a different town, it is not clear whether Plaintiff is subject to the same conditions and medical care that gave rise to his PI motions.

Accordingly, Plaintiff's two motions for injunctive relief will be denied.

**IT IS ORDERED** that Plaintiff's Motions for Preliminary Injunction (Doc. ##28-29) are **denied**.

DATED this 13th day of August, 2009.

_____
Mary H. Murguia
United States District Judge