WO                                                                                           JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karl Louis Guillen, | No. CV 08-1279-PHX-MHM (LOA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Gerald Thompson, et al., | |
| Defendants. | |

Plaintiff Karl Louis Guillen brought this civil rights action under 42 U.S.C. § 1983 against Dora Schriro, Arizona Department of Corrections (ADC) Director, and Ronolfo Macabuhay, Lewis Complex physician (Doc. #11).[1] Before the Court is Plaintiff's Emergency Motion for Temporary Restraining Order (TRO) requesting medications and a pain shot (Doc. #47). The Court directed Defendants to file an expedited response (Doc. #48), which they did (Doc. #62). Plaintiff then submitted a reply (Doc. #74). Plaintiff also filed five other motions that relate to his Emergency Motion for TRO:

(1) Motion for Issuance of Subpoena and Production of Documents (Doc. #54);

(2) Motion for Habeas Corpus Ad Testificandum with Medical Provision Order (Doc. #55);

---

[1] Upon screening, the Court dismissed Thompson, Berger, Palosaari, Doe, Breummer, Johnson, Kingsland, Herman, Linderman, Hatfield, Webb, Cooper, Butryn, Smith, Rios, Kocho, Parsons, Mendoza, Sikes, Curran, Zavala, and Coleman as Defendants (Doc. #13).

(3) Motion for Issuance of Subpoena to Compel Testimony and Production of Documents (Doc. #56);

(4) Motion for Emergency Medical Release Order by 3-Judge Panel (Doc. #58); and

(5) Motion for Expedited Hearing and Oral Argument (Doc. #59).

The Court will deny Plaintiff's Emergency Motion for TRO and his related motions.

## I. Background

Plaintiff initiated this action in July 2008 (Doc. #1), and he submitted his First Amended Complaint on September 8, 2008 (Doc. #11). His claims stem from his confinement in the Arizona State Prison Complex-Lewis, Rast Unit in Buckeye, Arizona (id. at 1).[2] Plaintiff stated that in April 2008, he began to suffer pain, allodynia, and hyperalgesia (id. at 3).[3] He alleged that from May 10-18, he submitted 14 Health Needs Requests (HNRs) for treatment of his extreme pain from postherpetic neuralgia, which Plaintiff described as "constant and unrelenting pain" and "the worst type of pain known to mankind" (id.).[4] Plaintiff claimed that this pain interfered with his ability to sleep, eat, exercise, and function. Plaintiff averred that when he was finally seen on May 18, Macabuhay informed him that treatment could only be provided for up to 7 days because there was no long-term treatment available (id. at 3-3(A)).

Plaintiff alleged that Defendants were aware that he was experiencing tachycardia, high blood pressure, and severe loss of weight due to the pain (id. at 3(A)). Plaintiff further alleged that Defendants were aware that in 2005, Plaintiff was taken to the University of Arizona Pain Clinic for an epidural spinal injection to alleviate pain caused by a prior flare-up. Plaintiff contended that Schriro restricted Macabuhay's ability to effectively treat

---

[2]On July 24, 2009, Plaintiff filed a Notice of Change of Address notifying the Court of his transfer to Eyman-Special Management Unit (SMU) I in Florence, Arizona (Doc. #76).

[3]Allodynia is a condition in which ordinarily nonpainful stimuli evoke pain, and hyperalgesia is extreme sensitivity to painful stimuli. Stedman's Medical Dictionary allodynia and hyperalgesia (27th ed. 2000).

[4]Neuralgia is defined as "pain of a severe, throbbing, or stabbing character in the course of distribution of a nerve." Stedman's Medical Dictionary neuralgia (27th ed. 2000).

1  Plaintiff's condition in part by reducing the medical care contract, which cut medical staff,
2  and by eliminating the majority of pharmacies that provided medication. Plaintiff alleged
3  that both Defendants were deliberately indifferent to his serious medical condition (id.).[5]

4  On December 22, 2008, the Court screened the amended pleading and ordered service
5  on Defendants (Doc. #13). Service was executed in February 2009 (Doc. ##14-15). The
6  following month, Defendants submitted their Answer (Doc. #22), and the Court issued a
7  Scheduling Order (Doc. #23).

8  In May 2009, Plaintiff filed two motions for preliminary injunctive relief (Doc. ##28-
9  29). These two motions concerned Plaintiff's placement into isolation and detention from
10 May 8-12 (id.). Plaintiff requested various forms of relief related to medical treatment, and
11 he alleged retaliation by staff, lack of due process in disciplinary proceedings, and lack of
12 access to courts (Doc. #29). The Court addresses these two preliminary injunction (PI)
13 motions in a separate Order.

14 On June 29, 2009, Plaintiff submitted his Emergency Motion for TRO (Doc. #47).
15 Plaintiff states that his motion concerns events that arose after filing his reply in support of
16 his previous PI motions (id.). His TRO request relates only to medical care (id.). The Court
17 directed Defendants to file a response to the motion within 5 days (Doc. #48). Defendants
18 submitted their response and oppose the issuance of a TRO (Doc. #62).

19 Meanwhile, Plaintiff filed a number of motions that all relate to his TRO request and
20 a potential hearing on the motion (Doc. ##54-56, 58-59).

## II.  Emergency Motion for TRO

### A.  Plaintiff's Contentions

Plaintiff states that at 1:15 p.m. on June 18, 2009, he was restrained and moved from
his cell to a shower 15 minutes before a scheduled legal call (Doc. #47 at 1). He avers that
a few minutes later, he was brought to Corrections Officer (CO) III Mendoza's office for the
legal call but he did not have his legal documents because his cell was being inventoried

---

[5] This claim was set forth in Count I of Plaintiff's Complaint (Doc. #11 at 3-3(A)). Plaintiff's nine other counts were dismissed for failure to state a claim (Doc. #13).

(id.). Plaintiff states that he was in extreme pain at the time, so Mendoza called medical; medical informed Mendoza that Plaintiff had just received his medications and probably gave them away, and he was not going to get a pain shot (id. at 1-2). Plaintiff states that he submitted an emergency HNR for relief but there was no response from medical (id. at 2). He claims that on June 23, Defendants and their agents sent CO II Haley and another officer to confiscate all of Plaintiff's medications, his asthma inhaler, allergy medications, and pain medication (id.).

Plaintiff requests a TRO for the return of his medications and pain-blocker shots (id.). He asks that the Court order these provisions at least until a hearing on the matter (id.).

### B.     Defendants' Response

In response, Defendants assert that Plaintiff has manipulated facts and omitted other facts (Doc. #62). They submit the following facts:

On June 10, 2009, Plaintiff requested a mental health appointment (id. at 3). On June 16, Dr. Deveau, a psychologist, scheduled Plaintiff for a mental health appointment (id.). The next day, Grant Nees, a psychology associate, went to the Rast Unit to see Plaintiff; however, because of an acute situation involving another inmate, Nees was unable to see Plaintiff at the time (id. at 4).

On June 18, Plaintiff's cell was inventoried. Pursuant to standard operating procedure, he was removed from his cell and taken to the shower during the inventory (id.). The inventory documented that Plaintiff had in his possession an asthma inhaler, 3 bottles of allergy tablets, 1 bag of Gabapentin, and 2 boxes of Loratadine (id.).[6]

Plaintiff had a legal call scheduled for June 18; he was escorted from the shower to the legal call but did not inform the officers—either in advance or during the call—that he needed his legal paperwork for the call (id. at 4).

Then, on June 23, Nees met with Plaintiff at approximately 11:30 a.m. (id. at 5). At

---

[6]Gabapentin is used to relieve the pain of postherpetic neuralgia, and Loratadine is an antihistamine used to treat allergy symptoms and allergic skin disorders. See www.nlm.nih.gov/medlineplus/druginformation.html.

this mental health appointment, Plaintiff informed Nees that he his chronic pain was causing him to suffer depression. He told Nees that he recently had suicidal ideations but that he is not currently experiencing suicidal thoughts (id.). Plaintiff also told Nees that he had a large "stash" of antihistamines and other medications. Following his meeting with Plaintiff, Nees had ADC officers search and remove any medications and/or antihistamines from Plaintiff's cell (id.). At 3:00 p.m. that same day, psychiatrist Dr. Bertel directed Plaintiff to be put on suicide watch immediately and transferred to Complex Medical for evaluation (id.). All of Plaintiff's medications were removed from his cell, and he was escorted to Complex Medical (id.). At 4:15 p.m., Bertel and Nees evaluated Plaintiff, who said that he was not suicidal (id. at 6). It was determined that the suicide watch was not warranted, and Plaintiff was moved back to his cell (id.). Nees called Lt. Berger, informed her that Plaintiff was not on suicide watch, and instructed her to return all of Plaintiff's medications (id., Ex. E). At 4:20 p.m., Plaintiff had a medical appointment with Macabuhay, who administered a pain shot and recommended consultation at a pain management clinic (id., Ex. F).

Defendants argue that because Plaintiff is receiving medical care and his medications were returned to him, his Emergency Motion for TRO should be denied (id.). They further argue that Plaintiff did not submit any inmate letters about this June incident, therefore, he has not exhausted the grievance process with respect to this claim (id.).

In support of their opposition, Defendants cite to their Response to Plaintiff's PI Motions (Doc. #62 at 2, ref. Doc. #45). They also submit a copy of Plaintiff's June 10, 2009 HNR requesting a mental health appointment (Doc. #62, Ex. A); the declaration of Kevin Mendoza, CO III (id., Ex. B); copies of Plaintiff's medical records for June 2009 (id., Ex. C); a copy of the ADC log from Plaintiff's housing unit (id., Ex. D); a copy of Berger's June 23, 2009 Information Report documenting the call that Plaintiff was to be put on suicide watch and the later call that he will not be on suicide watch and that all medications should be returned (id., Ex. E); and a copy of the medical record from Macabuhay's examination of Plaintiff on June 23 (id., Ex. F).

///

- 5 -

1 **C. Plaintiff's Reply**

In his reply, Plaintiff moves to strike Mendoza's declaration on the ground that he was not in the vicinity when Plaintiff was moved from his cell to the shower and thus does not have personal knowledge to testify about the event (Doc. #74 at 2). Plaintiff also disputes that Mendoza is authorized to set up legal calls or that he is even Plaintiff's CO III (id.).

Plaintiff next argues that Defendants do not properly respond to HNRs on the required ADC forms (id. at 3). He states that he has submitted over 20 HNRs for "emergency and extreme pain" but there has been no response to these HNRs (id.). He further contends that he has not received any "Special Needs Orders" for pain medications or for adequate medical treatment for his conditions (id.). Plaintiff points to the June 23 medical record of Macabuhay's examination as proof of irreparable injury and future harm because it documents Plaintiff's pain (id. at 4). Plaintiff states that despite this evidence, Defendants still have not provided adequate medical care (id.).

Plaintiff contends that Defendants have refused to provide evidentiary documents that Plaintiff has requested through discovery (id.). He argues that the documents they are withholding from him and the Court constitute a fraud upon the Court because they contradict Defendants' proffered arguments (id. at 4-5).

Plaintiff further argues that Defendants have attempted to remove Plaintiff's Americans with Disabilities Act (ADA) accommodation through false disciplinary proceedings, and he refers to the May 8, 2009 incident, which is the subject of Plaintiff's prior PI motions (id. at 5-6).[7] Plaintiff adds that Defendants have tried to induce a suicide watch for the purpose of removing his ADA accommodation (id. at 5).

Plaintiff concludes by requesting that the Court strike Mendoza's declaration or require a more specific statement; order that Defendants produce Plaintiff's medical file, Adult Inmate Management System (AIMS) file, and his account statement; enjoin Defendants from removing Plaintiff's medications; enjoin Defendants from causing Plaintiff

---

[7]In his First Amended Complaint, Plaintiff indicated that he was authorized to have a typewriter as an accommodation under the ADA (Doc. #11 at 5(C)).

harm through "security dis-incentives"; and order Defendants to provide outdoor exercise, medical treatment, and pain clinic evaluation (id. at 6-7). He also requests sanctions against Defendants and moves to compel various discovery materials (id. at 7).

**III. Other Pending Motions**

**A. Motion for Issuance of Subpoena and Production of Documents**

Plaintiff requests a subpoena be issued directing the ADC's official record keeper to appear at a show cause hearing and produce Plaintiff's AIMS file, the AIMS files and disciplinary histories of any and all confidential informants employed against Plaintiff, Plaintiff's medical and property files, the Rast Unit grievance log from January 2009 to the present, and all Rast Unit administrative decisions and memorandums regarding Plaintiff (Doc. #54).

Defendants respond to this motion and a second motion together (Doc. #70, Resp. to Doc. ##54 & 56). Defendants argue that Plaintiff's request for production of documents is defective under Federal Rule of Civil Procedure 37 because he did not comply with the "certification" requirement and he failed to request certain documents under Rule 34 before filing this motion (Doc. #70 at 4-5). Defendants also state that some of the documents Plaintiff requests are either irrelevant or are confidential (id. at 7). Lastly, Defendants state that Plaintiff's requests for his medical records and AIMS files are moot because those documents have already been provided to him (id. at 2). Defendants attach copies of letter correspondence between the parties and a chart of Plaintiff's discovery requests in his Requests for Production of Documents and his Motions to Compel (id., Exs. A-G).

**B. Motion for Habeas Corpus Ad Testificandum with Medical Provision Order**

Plaintiff requests the issuance of a habeas corpus ad testificandum with special medical provisions; namely, that upon transport of Plaintiff to the Court for the show cause hearing, Defendants have on hand pain block injunctions (Doc. #55).

/ / /

/ / /

### C. Motion for Issuance of Subpoena to Compel Testimony and Production of Documents

Plaintiff requests that a subpoena be issued compelling the testimony of ten individuals identified by Plaintiff (Doc. #56). Plaintiff sets forth questions that must be answered by these individuals through testimony and production of documents (id.).

Defendants combined their response to this motion with their response to Plaintiff's Motion for Issuance of Subpoena and Production of Documents (Doc. #70, Resp. to Doc. ##54 & 56). Their opposition to this motion is set forth above in subsection A.

### D. Motion for Emergency Medical Release Order by 3-Judge Panel

In this motion, Plaintiff submits that he needs a medical release or furlough from ADC custody because he is not receiving adequate treatment due to overcrowding and lack of funding at ADC (Doc. #58). He states that Defendants' response to his TRO motion failed to address the denial of medical treatment and possibility of irreparable injury or death. He therefore requests that a 3-judge panel issue a medical release or furlough so that he can obtain the treatment he needs (id.).

In response, Defendants argue that under 18 U.S.C. § 3626, a prisoner-release order may be entered only if crowding is the primary cause of the violation and no other remedy exists (Doc. #63 at 1). They submit that Plaintiff has not proffered any evidence or proof that overcrowding is the cause of his alleged violation (id. at 2). Defendants also state that as to any new assertions that Plaintiff is denied access to courts, ADC records show that he has been able to check out legal books and obtain copies from the library (id. at 2-3). Defendants attach a copy of Macabuhay's June 23, 2009 medical record from the examination of Plaintiff (id., Ex. A), copies of Rast Detention Unit checkout forms (id., Ex. B), and copies of copy logs (id., Ex. C).

### E. Motion for Expedited Hearing and Oral Argument

Plaintiff requests an expedited show cause hearing on his motion for preliminary injunctive relief (Doc. #59). He asserts that a hearing is necessary if Defendants fail to produce Plaintiff's medical file, banking statements, and other documents (id. at 2).

Defendants respond that there is no need for an evidentiary hearing because arguments have been fully set forth and exhibits have been submitted to the Court and that no other evidence would be submitted at a hearing (Doc. #64).

## IV. Preliminary Injunction

### A. Legal Standard

The purpose of preliminary injunctive relief is to preserve the status quo or to prevent irreparable injury pending the resolution of the underlying claim. Sierra On-line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984). To obtain a preliminary injunction, the movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Defense Council, Inc., 129 S. Ct. 365, 374 (2008). A preliminary injunction is an extraordinary and drastic remedy and "one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)).

In attempting to establish either eligibility for an injunction or that a party is not entitled to injunctive relief, the parties may rely on developments that postdate the pleadings and pretrial motions. Farmer v. Brennan, 511 U.S. 825, 846 (1994).

### B. Analysis

The Court finds that the parties' briefing and exhibits are sufficient for a ruling on the motion without a hearing. Therefore, Plaintiff's Motion for Habeas Corpus Ad Testificandum (Doc. #58) and Motion for Expedited Hearing and Oral Argument (Doc. #59) will be denied.

#### *1. Scope of PI Request*

Plaintiff's Emergency Motion for TRO requests an order directing that Plaintiff's medications be returned and that he be given a pain shot (Doc. #47). This PI request is related to the issues underlying this action; namely, allegations of deliberate indifference and

inadequate medical care (Doc. #11). The Court will not address Plaintiff's requests for other relief raised in his reply memorandum (i.e., for Court interference into prison security matters and for outdoor exercise). Those requests are unrelated to the medical-care claim in this case, and they were not raised until the reply. See Kaimowitz v. Orlando, 122 F.3d 41, 43 (11th Cir. 1997) (injunction must relate to the issues in the lawsuit); Cuevas-Gaspar v. Gonzales, 430 F.3d 1013, 1021 n. 4 (9th Cir. 2005) (declining to consider issues raised for the first time in a reply memorandum). And because it is unrelated to the underlying claim, the Court will not address the parties' dispute over the June 18, 2009 incident and whether Plaintiff was denied access to his legal documents for his legal telephone call. Thus, Plaintiff's request to strike Mendoza's declaration, which is limited to the June 18 incident, is denied as moot.

### *2. Mootness*

Defendants submit evidence showing that on June 23, 2009, following actions taken by medical personnel in response to a mental health concern, Plaintiff's medications were returned to him and he saw Macabuhay, who administered a pain shot (Doc. #62, Exs. E-F). In reply, Plaintiff does not specifically rebut this evidence (Doc. #74). He refers to Macabuhay's examination on June 23, but does not deny that Macabuhay gave him a pain shot (id. at 3-4). On this record, Plaintiff has received the relief he sought in his emergency motion.

The record also reflects a Notice of Change of Address filed by Plaintiff on July 24, 2009 (Doc. #76). Plaintiff states that he has been moved from the Rast Unit in Buckeye, Arizona, to the SMU I facility in Florence, Arizona (id.). When an inmate seeks injunctive relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. See Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995). In light of Plaintiff's transfer to a different facility in a different town, it is not clear whether Plaintiff is subject to the same conditions and medical care that gave rise to his Emergency Motion for TRO.

For these reasons, Plaintiff's request for injunctive relief is moot.

### *3. PI Standard*

Even assuming that Plaintiff has not received all the relief he requested and his claim was not mooted by his transfer, the Court finds that he has not demonstrated irreparable injury sufficient to warrant an injunction. To meet the "irreparable harm" requirement, Plaintiff must do more than simply allege imminent harm; he must demonstrate it. Caribbean Marine Servs. Co., Inc. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988). This requires Plaintiff to demonstrate by specific facts that there is a credible threat of immediate and irreparable harm. Fed. R. Civ. P. 65(b). Mere "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." Caribbean Marine, 844 F.2d at 674-75. Plaintiff's claims of an impending asthma attack or stroke or heart attack are not supported by specific facts and are speculative (Doc. #47 at 1; Doc. #74 at 4). More importantly, the undisputed evidence demonstrates that Plaintiff received medical care from both a mental health specialist and the regular prison physician on June 23, 2009 (Doc. #62, Exs. C-F). Plaintiff's claim amounts to a disagreement with the care he has received, which does not warrant a TRO or PI. Plaintiff's Emergency Motion for TRO will therefore be denied.

## V. Pending Motions

The remaining motions all relate to a hearing on Plaintiff's Emergency Motion. Consequently, the motions are mooted by the denial of the motion.

To the extent that Plaintiff seeks to compel production of documents regardless of a hearing on the motion (Doc. ##54, 46), he fails to comply with Federal Rule of Civil Procedure 37(a), which provides that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Nor does he adhere to the Local Rules of Civil Procedure. Local Rule 37.1 requires a motion to compel to include a separate statement that identifies in numbered paragraphs the specific discovery requests and answers thereto, and an explanation of why each answer is deficient. And Local Rule 7.2(j) requires every discovery motion to include an attached certification that the

| | |
|---|---|
| 1 | movant personally consulted with the opposing party and made sincere efforts to resolve the |
| 2 | issue. |

In his Motion for Issuance of Subpoena and Production of Documents, Plaintiff indicates in a footnote that he had previously submitted a Request for Documents in April; however, he does not provide any other information, such as how Defendants responded to the request, why their answers were deficient, or whether they wholly failed to respond (Doc. #54 at 1 n. 1). In his Motion for Issuance of Subpoena to Compel Testimony and Production of Documents, Plaintiff does not indicate whether he previously requested the documents listed in the motion (Doc. #56). Accordingly, Plaintiff's discovery motions (Doc. ##54, 56), construed as motions to compel, will be denied.

Finally, Plaintiff's Motion for Emergency Medical Release Order by 3-Judge Panel will be denied (Doc. #58). Because Plaintiff has not met the standard for preliminary injunctive relief, he cannot show that a release order is warranted. Further, a release order may only be entered after other orders for less intrusive relief have failed to remedy the violation at issue. 18 U.S.C. § 3626(a)(3)(i). No orders for relief have been entered in this action; thus, a release order would be premature.

**IT IS ORDERED:**

(1) Plaintiff's Emergency Motion for TRO (Doc. #47) is **denied**.

(2) Plaintiff's Motion for Issuance of Subpoena and Production of Documents (Doc. #54); Motion for Habeas Corpus Ad Testificandum with Medical Provision Order (Doc. #55); Motion for Issuance of Subpoena to Compel Testimony and Production of Documents (Doc. #56); Motion for Emergency Medical Release Order by 3-Judge Panel (Doc. #58); and Motion for Expedited Hearing and Oral Argument (Doc. #59) are all **denied**.

DATED this 11th day of August, 2009.

Mary H. Murgia
United States District Judge