IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karl Louis Guillen,<br><br>        Plaintiff,<br><br>vs.<br><br>Gerald Thompson, et al.,<br><br>        Defendants. | No. CV 08-1279-PHX-MHM (LOA)<br><br>**ORDER** |

Plaintiff Karl Louis Guillen brought this civil rights action under 42 U.S.C. § 1983 against Dora Schriro, Arizona Department of Corrections (ADC) Director, and Ronolfo Macabuhay, Lewis Complex physician (Doc. #11).[1] Before the Court is Plaintiff's Motion for Preliminary Injunction (Medical Treatment) Based Upon New Evidence (Doc. #108), which is fully briefed (Doc. ##118, 123).

The Court will deny Plaintiff's motion.

**I.   Background**

Plaintiff initiated this action in July 2008 (Doc. #1), and he submitted his First Amended Complaint on September 8, 2008 (Doc. #11). His claims stem from his confinement in the Arizona State Prison Complex-Lewis, Rast Unit in Buckeye, Arizona

---

[1] Upon screening, the Court dismissed Thompson, Berger, Palosaari, Doe, Breummer, Johnson, Kingsland, Herman, Linderman, Hatfield, Webb, Cooper, Butryn, Smith, Rios, Kocho, Parsons, Mendoza, Sikes, Curran, Zavala, and Coleman as Defendants (Doc. #13).

(id. at 1). Plaintiff alleged that in April 2008, he began to suffer pain, allodynia, and hyperalgesia (id. at 3).[2] He alleged that from May 10 to May 18, he submitted 14 Health Needs Requests (HNRs) for treatment of his extreme pain from postherpetic neuralgia, which Plaintiff described as "constant and unrelenting pain" and "the worst type of pain known to mankind" (id.).[3] Plaintiff claimed that this pain interfered with his ability to sleep, eat, exercise, and function. Plaintiff averred that when he was finally seen on May 18, Macabuhay informed him that treatment could only be provided for up to 7 days because there was no long-term treatment available (id. at 3-3(A)).

Plaintiff alleged that Defendants were aware that he was experiencing tachycardia, high blood pressure, and severe weight loss due to the pain (id. at 3(A)). Plaintiff further alleged that Defendants were aware that in 2005, Plaintiff was taken to the University of Arizona Pain Clinic for an epidural spinal injection to alleviate pain caused by a prior flare-up. Plaintiff contended that Schriro restricted Macabuhay's ability to effectively treat Plaintiff's condition, in part, by reducing the medical care contract, which cut medical staff, and by reducing the number of pharmacies that provided medication to the ADC. Plaintiff alleged that both Defendants were deliberately indifferent to his serious medical condition (id.).[4]

On December 22, 2008, the Court screened the amended pleading and ordered service on Defendants (Doc. #13). Service was executed in February 2009 (Doc. ##14-15). The following month, Defendants submitted their Answer (Doc. #22), and the Court issued a Scheduling Order (Doc. #23).

---

[2]Allodynia is a condition in which ordinarily nonpainful stimuli evoke pain, and hyperalgesia is extreme sensitivity to painful stimuli. Stedman's Medical Dictionary allodynia and hyperalgesia (27th ed. 2000).

[3]Neuralgia is defined as "pain of a severe, throbbing, or stabbing character in the course of distribution of a nerve." Stedman's Medical Dictionary neuralgia (27th ed. 2000).

[4]This claim was set forth in Count I of Plaintiff's Complaint (Doc. #11 at 3-3(A)). Plaintiff's nine other counts were dismissed for failure to state a claim (Doc. #13).

On August 24, 2009, Plaintiff filed his Motion for Preliminary Injunction (Medical Treatment) Based Upon New Evidence (Doc. #108).[5]

## II. Plaintiff's Motion for Preliminary Injunction (PI)

### A. Plaintiff's Contentions

Plaintiff states that this emergency request for a PI is based upon developments and discovery that postdate the pleadings, including Defendants' late disclosure of medical records, confiscation of Plaintiff's typewriter and legal boxes, and a retaliatory transfer (id. at 1).

Plaintiff sets out facts concerning his medical care since his diagnosis in December 2003 (id. ¶¶ 1-9). The more recent facts include Plaintiff's assertion that in June 2008, Macabuhay gave Plaintiff a Nubain injection and made a request to the ADC Medical Review Board for Lidocaine patches; the request was denied by Schriro, Adututu, and Moriarty (id. ¶ 3). In July and August 2008, Macabuhay administered additional Nubain injections for temporary relief (id. ¶ 5). Also in August 2008, Macabuhay made another request for Methodone, Lidocaine, Neurontin, and a pain clinic referral; Plaintiff only received the Neurontin (id. ¶ 6).

Plaintiff states that on July 21, 2009, he was transferred to the Arizona State Prison Complex-Eyman, Special Management Unit (SMU) I in Florence, Arizona (id. at 2; see Doc. #88). He avers that upon his arrival to SMU I, ADC medical staff were so concerned that Plaintiff might suffer a heart attack or stroke that they sent him to Tucson for emergency hospital treatment (Doc. #108 at 2, 4). Plaintiff alleges that ADC Medical Staff continuously diagnose his heart rate and blood pressure as extreme and they administer temporary pain shots; however, these shots block pain for just eight hours (id. at 4). Plaintiff argues that ADC's treatment of him, which includes three emergency trips to medical treatment centers, evidences the imminent danger of irreparable injury that Plaintiff faces absent a PI for proper medical treatment (id. at 4-5). Plaintiff contends that Defendants know how Plaintiff must

---

[5]Since May 2009, Plaintiff has filed multiple motions for injunctive relief (Doc. ##28-29, 47, 55-56, 58).

- 3 -

1 be treated yet they deny that treatment because they lack funds and, in addition, they torture
2 him and deny him outdoor exercise—which in turn exacerbates Plaintiff's pain (id. at 5).
3 Plaintiff declares that he has lived with extreme pain for over a year (id., Ex. 2, Pl. Decl. ¶ 3).
4 And he states that his chest often hurts, he cannot sleep, he cannot think clearly, and he
5 cannot walk properly due to muscle degeneration (id.).

6 Plaintiff requests an Order from the Court directing Schriro (or Ryan, the current ADC
7 Director), to provide the treatment prescribed by Macabuhay in August 2008; namely, a pain
8 clinic referral, Methadone, Lidocaine patches, and Gabapentin/Neurontin (id. at 5).

9 In support of his PI request, Plaintiff submits a copy of his Adult Inmate Management
10 System (AIMS) report (id., Ex. 1); his own declaration (id., Ex. 2); copies of his medical
11 records (id., Ex. 3 (282 pages)); and a copy of a summary for treatment of postherpetic
12 neuralgia from the American Academy of Neurology (id., Ex. 4).

### B. Defendants' Response

Defendants oppose Plaintiff's motion and argue that it is not based upon new evidence; rather, it simply repeats the same facts and arguments Plaintiff has previously presented in 27 filings in this case (Doc. #118 at 1-2). Defendants note that the Court has denied all of Plaintiff's prior PI motions (id. at 2).

With respect to the current motion, Defendants contend that Plaintiff seeks relief that the ADC has already provided to him (id. at 1-2). They confirm that Plaintiff received emergency medical treatment upon his transfer to SMU I and that at the hospital he was treated with four different medications, including Dilaudid and Toradol for pain relief and management of pain, Gabapentin, and Vistaril for treatment of anxiety and tension (id. at 4-5). Defendants assert that since Plaintiff's hospital treatment, ADC has continued the prescription for Gabapentin, given Plaintiff an intramuscular Toradol shot, and in August 2009, issued Plaintiff Lidoderm patches (containing 5% Lidocaine) (id. at 5-6). Finally, Defendants state that Plaintiff is scheduled to visit a pain management clinic in late October 2009 (id. at 4).

Defendants argue that Plaintiff has submitted no evidence demonstrating the existence

of a real or immediate injury (id. at 7). Defendants maintain that the evidence instead shows that the ADC has been treating Plaintiff's condition throughout his incarceration and continues to do so (id. at 8). They state that Plaintiff's arguments for higher dosages of certain medications merely indicate a difference of opinion with medical personnel, which they argue is insufficient to warrant a PI (id.). Defendants conclude that Plaintiff also fails to demonstrate a likelihood of success on the merits of his claim (id. at 1, 9).

Defendants proffer copies of various medical and pharmacy records (id., Exs. A-L) and a copy of Plaintiff's recent HNR (id., Ex. M).

**C.    Plaintiff's Reply**

In his reply, Plaintiff maintains that the new evidence supporting his motion is the medical records that Defendants had previously withheld (Doc. #123). He argues that these records support his allegations, which the Court previously found insufficient on their own to support PI relief (id. at 2). Plaintiff further argues that the medical records, including those submitted with Defendants' response, confirm that Plaintiff often goes months without pain treatment while suffering extreme pain and, specifically, he was deprived of Lidocaine patches for over a year (id. at 3).

Plaintiff asserts that evidence in the record shows that Defendants have denied adequate medical treatment for over a year; thus, establishing a likelihood of success on the merits (id. at 5). He submits that the denial of a constitutional right—in this case the right to adequate healthcare—constitutes irreparable harm (id.). As to the pending appointment at a pain clinic and renewal of Lidocaine treatment, Plaintiff states that it does not repair the injuries he suffered when he went without adequate treatment nor does it restore the status quo (id. at 6). And he argues that the evidence shows that he still suffers extreme pain and cannot sleep or exercise (id.).

Plaintiff submits copies of Macabuhay's and Schriro's responses to interrogatories and requests for admissions (id., Attachs.). He contends that Schriro's responses regarding cuts to the inmate healthcare budget and pharmacies are perjurous because they contradict published statements from ADC (id. at 4-5).

In addition to his request for medical treatment, Plaintiff seeks a show cause hearing, a declaratory order, or sua sponte summary judgment in his favor (id. at 6-7).

### III. Preliminary Injunction Legal Standard

The purpose of preliminary injunctive relief is to preserve the status quo or to prevent irreparable injury pending the resolution of the underlying claim. Sierra On-line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984). To obtain a preliminary injunction, the movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008). A preliminary injunction is an extraordinary and drastic remedy and "one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)).

In attempting to establish either eligibility for an injunction or that a party is not entitled to injunctive relief, the parties may rely on developments that postdate the pleadings and pretrial motions. Farmer v. Brennan, 511 U.S. 825, 846 (1994).

### IV. Analysis

As previously stated by the Court, to meet the "irreparable harm" requirement, Plaintiff must do more than simply allege imminent harm; he must demonstrate it. Caribbean Marine Servs. Co., Inc. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988). This requires Plaintiff to demonstrate by specific facts that there is a credible threat of immediate and irreparable harm. Fed. R. Civ. P. 65(b). Mere "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." Caribbean Marine, 844 F.2d at 674.

Here, the undisputed evidence demonstrates that Plaintiff was taken to the hospital on July 21, 2009, where he received pain medications, Gabapentin, and an anti-anxiety medication (Doc. #118, Ex. E). The evidence also shows a continuing prescription for

Gabapentin (id., Ex. G, prescription issued Sept. 16, 2009). Also, Plaintiff confirms that the ADC is now providing him with Lidocaine patches and he has a pending pain-clinic appointment (Doc. #123 at 3). The record therefore shows that he has received the treatment he sought in his PI motion. Further, there is no evidence that his current treatment is inadequate, much less that it evinces deliberate indifference to his medical needs. Plaintiff's own evidence—the American Academy of Neurology's summary for treatment of postherpetic neuralgia—shows that Plaintiff is receiving treatments considered to have the best efficacy in treating postherpetic neuralgia (Doc. #108, Ex. 4 at 1-2).

The Court notes that in his reply memorandum, Plaintiff shifts his argument to claim that the "1.4 year" delay in providing Lidocaine patches and the "1.6 year" delay in providing pain clinic treatment do not remedy the injuries he has suffered in the past (Doc. #123 at 3, 6). This argument does not support injunctive relief. Whether the record can demonstrate that Defendants unlawfully denied or delayed adequate medical care in the past, as Plaintiff argues, has yet to be determined. But because Plaintiff presently receives appropriate medication and has an impending pain-clinic appointment, he cannot make the requisite showing for a PI. The Court expects that Plaintiff will notify the Court if the October 2009 pain-clinic appointment is not kept. Until then, any speculation that treatment he currently receives will not continue is insufficient to support an injunction.

Plaintiff's argument that Schriro's responses to discovery are inconsistent with other ADC materials is not relevant to his instant motion for specific medical treatment.

In conclusion, Plaintiff's Motion for PI Based Upon New Evidence will be denied, as will his requests for a hearing and for summary judgment.

/ / /

1     **IT IS ORDERED that** the reference to the Magistrate Judge is **withdrawn** as to
2 Plaintiff's Motion for PI (Medical Treatment) Based Upon New Evidence (Doc. #108), and
3 the motion is **denied**.

4     DATED this 15th day of October, 2009.

_____
Mary H. Murgula
United States District Judge