WO                                                                                    JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Karl Louis Guillen,                )    No. CV 08-1279-PHX-MHM (LOA)
                                   )
          Plaintiff,               )    **ORDER**
                                   )
vs.                                )
                                   )
Gerald Thompson, et al.,           )
                                   )
          Defendants.              )
                                   )

Before the Court is Plaintiff's Motion for Reconsideration of the Court's Order denying Plaintiff's request for preliminary injunctive relief (Doc. #129, see Order, Doc. #127). The Court directed Defendants to respond to the motion (Doc. #139),[1] which they did (Doc. #148), and Plaintiff filed a reply (Doc. #164).

The Court will deny Plaintiff's motion.

**I.    Background**

Plaintiff's claims stem from his confinement in the Arizona State Prison Complex-Lewis, Rast Unit in Buckeye, Arizona (Doc. #11 at 1). In his First Amended Complaint, Plaintiff named as Defendants Dora Schriro, former Arizona Department of Corrections (ADC) Director, and Ronolfo Macabuhay, Lewis Complex physician (id.).[2]

---

[1] Under Local Rule of Civil Procedure 7.2(g)(2), no response to a motion for reconsideration shall be filed unless ordered by the Court.

[2] Upon screening, the Court dismissed 22 other individuals as Defendants (Doc. #13).

Plaintiff alleged that in April 2008, he began to suffer pain, allodynia, and hyperalgesia (id. at 3).[3] He alleged that he repeatedly requested treatment for his extreme pain from postherpetic neuralgia, which Plaintiff described as "constant and unrelenting pain" and "the worst type of pain known to mankind" (id.).[4] Plaintiff averred that when he was finally seen on May 18, Macabuhay informed him that treatment could only be provided for up to 7 days because there was no long-term treatment available (id. at 3-3(A)).

Plaintiff alleged that Defendants were aware that he was experiencing tachycardia, high blood pressure, and severe weight loss due to the pain (id. at 3(A)). Plaintiff further alleged that Defendants were aware that in 2005, Plaintiff was taken to the University of Arizona Pain Clinic for an epidural spinal injection to alleviate pain caused by a prior flare-up. Plaintiff contended that Schriro restricted Macabuhay's ability to effectively treat Plaintiff's condition, in part, by reducing the medical care contract, which cut medical staff, and by reducing the number of pharmacies that provided medication to the ADC. Plaintiff alleged that both Defendants were deliberately indifferent to his serious medical condition (id.).[5]

## II. Plaintiff's Previous Motion for Preliminary Injunction

On August 24, 2009, Plaintiff filed his "Motion for Preliminary Injunction (Medical Treatment) Based Upon New Evidence," in which he set out facts regarding his treatment since the filing of his action (Doc. #108). He claimed that since June 2008, Macabuhay had requested medication—including Lidocaine patches, Methodone, and Neurontin—and a pain clinic referral (id. at 3). Plaintiff further claimed that since his July 2009 transfer to the Arizona State Prison Complex-Eyman, Special Management Unit (SMU) I in Florence,

---

[3]Allodynia is a condition in which ordinarily nonpainful stimuli evoke pain, and hyperalgesia is extreme sensitivity to painful stimuli. Stedman's Medical Dictionary allodynia and hyperalgesia (27th ed. 2000).

[4]Neuralgia is defined as "pain of a severe, throbbing, or stabbing character in the course of distribution of a nerve." Stedman's Medical Dictionary neuralgia (27th ed. 2000).

[5]This claim was set forth in Count I of Plaintiff's Complaint (Doc. #11 at 3-3(A)). Plaintiff's nine other counts were dismissed for failure to state a claim (Doc. #13).

- 2 -

Arizona, he has received numerous emergency hospital treatments for extreme heart rate and blood pressure (id. at 2, 4). He stated that he suffers extreme pain and he has been administered temporary pain shots; however, these shots block pain for just eight hours (id. at 4; Ex. 2, Pl. Decl. ¶ 3). His preliminary injunction motion requested an Order from the Court directing Schriro (or Ryan, the current ADC Director), to provide the treatment prescribed by Macabuhay in August 2008; namely, a pain clinic referral—for epidural steroid injections, Methadone, Lidocaine patches, and Gabapentin/Neurontin (id. at 5).

In response, Defendants asserted that since Plaintiff's hospital treatment, ADC has continued a prescription for Gabapentin, given Plaintiff an intramuscular Toradol shot, and in August 2009, issued Plaintiff Lidoderm patches (Doc. #118 at 5-6). And Defendants stated that Plaintiff was scheduled to go to the pain management clinic in late October 2009 (id. at 4, 8). They proffered a copy of an e-mail between two ADC officials and a representative from the Arizona Attorney General's office; this e-mail states that Plaintiff is scheduled for pain management in October 2009 (id., Ex. B).

Based on Defendants' evidence that they were continuing the prescription for Gabapentin and that Plaintiff had a pending pain-clinic appointment, the Court denied Plaintiff's motion for injunctive relief (Doc. #127). The Order, issued on October 20, 2009, noted that the Court expected Plaintiff to notify the Court if the October 2009 pain-clinic appointment was not kept (id. at 7).

### III. Plaintiff's Motion for Reconsideration

#### A. Plaintiff's Motion

In his pending motion, Plaintiff asserts that he was not taken to the pain clinic in October 2009 (Doc. #129). Plaintiff states that, instead, on October 27, he was taken to St. Mary's Hospital again, where he met briefly with a physician and was told that his Gabapentin needed to be increased (id. at 2). Plaintiff explains that later that day, after his return to SMU I, he received the same dosage of Gabapentin that he had previously been administered (id. at 2-3).

Plaintiff submits that Defendants' representation to the Court that he was going to

receive treatment at a pain clinic was fraud upon the Court, and he contends that Defendants created e-mails to convince the Court that an injunction was not necessary (id. at 3-4). Plaintiff argues that in light of Defendants' failure to take him to the pain clinic as promised—which Plaintiff refers to "'song and dance' wordplay" from Defendants—and the fact that he has needed pain clinic treatment since 2008, the Court should reconsider its denial of the preliminary injunction motion (id. at 1, 4-5). He also asks that the Court find Defendants in contempt and issue sanctions for falsely implying that Plaintiff would be taken to the pain clinic (id. at 5).

### B. Defendants' Response

In response, Defendants concede that Plaintiff was not taken to the pain clinic (Doc. #148 at 2). They explain that "the use of the term 'a pain management clinic' may have been confusing and that, perhaps, their previous counsel of record may have misunderstood the ADC pain clinic referral procedure" (id.). According to Defendants, the ADC Medical Review Committee, which authorizes outside medical treatment, does not refer inmates directly to a pain management clinic for treatment; rather, they make a referral to a neurologist for evaluation, and that neurologist may make a referral for further treatment, such as injections at a pain clinic (id.). Thus, Defendants state that Plaintiff's October 27 appointment was with a neurologist (id.). They further contend that Plaintiff is now awaiting an appointment at an outside pain management clinic and they will notify the Court as soon as that appointment is set (id. at 3). To support this contention, Defendants cite to the declaration of Dr. Macabuhay, which is submitted with Defendants' Statement of Facts supporting their summary judgment motion (Doc. #136, Ex. B, Macabuhay Decl. ¶ 56).[6]

Defendants also claim that state budget problems and the enactment of House Bill 2010 has presented a temporary hurdle to Plaintiff's appointment at an outside pain clinic (Doc. #148 at 2). Defendants assert that House Bill 2010 caps the fees paid to ADC outside

---

[6]Macabuhay's declaration statement cites to Plaintiff's December 1, 2009 ADC medical record, which notes a pain clinic referral and "consult pain clinic for selective epidural pain nerve [illegible]" (Doc. #136, Ex. B, Attach. 4, Bates No. 00534).

- 4 -

medical contractors and, consequently, many of the outside medical providers have cancelled ADC contracts (id. at 2-3).

Defendants otherwise argue that Plaintiff cannot show that he is likely to succeed on the merits, likely to suffer irreparable harm, that the balance of equities tips in his favor, or that an injunction is in the public interest (id. at 7). Thus, they contend that his motion for reconsideration should be denied (id.).

### C. Plaintiff's Reply

In his reply, Plaintiff asserts that Defendants continue to commit fraud upon the Court with new misrepresentations (Doc. #164). Plaintiff makes claims regarding his placement status in SMU I, his alleged involvement in gambling operations, and transportation violations by ADC (id. at 4-7). He also asserts that he is unable to fill prescriptions for the proper dosages and that his emergency health needs requests are not responded to timely (id. at 7-8). Plaintiff concludes by arguing that the threat of irreparable injury is very real and directly related to his postherpetic neuralgia pain and the "psychosocial affectations created by Defendants" and their unconstitutional treatment (id. at 8-9). Plaintiff attaches to his reply copies of medical records; drug label information; a copy of the Mayo Clinic Family Health Book; grievance documents; and the declaration of inmate Aaron Kraft, who testifies about a May 2009 incident involving Plaintiff (id., Attachs. 1-6).

### D. Supplemental Filings

On January 26, 2010, Defendants filed a Notice indicating that on January 12, Plaintiff was taken to Advanced Pain Management in Glendale, Arizona, and he met with Dr. Page, who scheduled a series of epidural steroid injunctions for three weeks (Doc. #165). There is no affidavit or other evidence accompanying this Notice.

Plaintiff moved to strike this Notice on the ground that when he arrived at the pain management clinic, no examination or treatment took place (Doc. #167). The Court denied Plaintiff's motion to strike (Doc. #170).

Thereafter, Defendants filed another Notice stating that on January 29, Plaintiff received the first of a series of three weekly epidural steroid injections pursuant to the

- 5 -

1  direction of Dr. Page at Advanced Pain Management in Glendale (Doc. #171).

2      Plaintiff filed a Notice/Declaration regarding his treatment and his medical concerns (Doc. #176). He stated that he received epidural injections into his spinal cord on January 29 and February 5, and is scheduled for a third injection on February 12 (id. at 1). Plaintiff averred that the first two procedures provided only 24 hours of relief, and his left foot lost feeling (id.). He further averred that he has received no treatment for his high blood pressure and is still subjected to chronic stressors in his housing facility (id. at 2).

    On March 3, 2010, Defendants filed a final notice indicating that Plaintiff received his last epidural injection on February 12 (Doc. #179).

**IV.  Legal Standard**

    Motions for reconsideration should be granted only in rare circumstances. <u>Defenders of Wildlife v. Browner</u>, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). Mere disagreement with a previous order is an insufficient basis for reconsideration. See <u>Leong v. Hilton Hotels Corp.</u>, 689 F. Supp. 1572, 1573 (D. Haw. 1988). Rather, reconsideration is appropriate only "in the face of the existence of new evidence, an intervening change in the law, or as necessary to prevent manifest injustice." <u>Navajo Nation v. Confederated Tribes of Yakama Indian Nation</u>, 331 F.3d 1041, 1046 (9th Cir. 2003). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." <u>Kona Enters., Inc. v. Estate of Bishop</u>, 229 F.3d 877, 890 (9th Cir. 2000). Nor may a motion for reconsideration repeat any argument previously made in support of or in opposition to a motion. <u>Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.</u>, 215 F.R.D. 581, 586 (D. Ariz. 2003).

**V.  Analysis**

    Plaintiff's Motion for Reconsideration is based on the existence of new evidence; namely, the fact that Defendants did not take Plaintiff to a pain management clinic in October 2009 as they represented in their preliminary-injunction motion briefing. This representation served, in part, as the basis for denying Plaintiff's request for injunctive relief. A review of the matter is therefore appropriate.

The Court finds Defendants' failure to bring Plaintiff to a pain clinic in October 2009, to be very troubling. Defendants' speculative, unsupported assertions put forth to explain that failure are also troubling.

Defendants assert that the term "a pain management clinic" may have been confusing and that prior counsel may have misunderstood the pain clinic referral procedure (Doc. #148 at 2). The Court notes that, according to the docket, the Arizona Attorney General's Office has represented Defendants throughout the litigation. Nonetheless, even if there was another attorney on the case, current counsel presents no evidence of confusion or misunderstanding by that attorney, such as an affidavit or declaration. It is questionable whether such evidence could be obtained, as the medical records—in the record at the time the underlying motion was briefed—clearly distinguish *pain clinic* treatment from other medical treatment or physician care (see e.g. Doc. #108, Exs. at 53, 58, 63, 65-67, 74, 80, 82 (medical records from the Pain Management Clinic at the University of Arizona)). There was no doubt that Plaintiff's preliminary injunction request concerned *pain clinic* treatment (see Doc. #108 at 5-6), and evidence that Defendants submitted in response to Plaintiff's request was specific to *pain clinic* treatment (see Doc. #118 at 4, Ex. A (Macabuhay's June 23, 2009 consult request for "pain management clinic")[7] and Ex. E (July 28, 2009 medical record noting that Plaintiff is scheduled to be evaluated at "a pain clinic")). Indeed, Defendants specifically and repeatedly stated in their response that Plaintiff was scheduled for "an appointment at a pain management clinic" in October 2009 (Doc. #118 at 8, 4).

In their response to the Motion for Reconsideration, Defendants explain that a temporary delay in getting Plaintiff to a pain management clinic was caused by the state's budget shortfall and the cancellation of ADC contracts by outside medical providers, which required ADC to locate and contract with new providers (Doc. #148 at 2-3). Defendants do not submit an affidavit or any evidence to support this explanation, nor is there any evidence

---

[7]In their response to Plaintiff's preliminary injunction motion, Defendants asserted that Macabuhay later withdrew his June 23, 2009 request for an outside consultation; yet, they do not indicate where in the record this withdrawal is documented (Doc. #118 at 4).

- 7 -

to demonstrate that budget problems affected *Plaintiff's* pain-clinic treatment.

Defendants' subsequent Notices to the Court likewise lack any evidentiary support. These Notices state that on January 12, Plaintiff met with a physician at the Glendale pain clinic, and that on January 29 and February 12 and one unidentified date in between, Plaintiff received epidural injections at the pain clinic (Doc. ##165, 171, 179). But there are no medical records or sworn statements of any individuals with personal knowledge of the pain-clinic treatment (see id.). See Barcamerica Int'l USA Trust v. Tyfield Importers, Inc., 289 F.3d 589, 593 n. 4 (9th Cir. 2002) (statements of counsel are not evidence).

Defendants' lack of evidence, however, is of no moment because, in a subsequent filing, Plaintiff confirmed that he received the desired epidural injections in January and February 2010 (Doc. #176 at 1). Plaintiff also confirmed that he is being prescribed Methadone, Gabapentin, and a 12-hour Lidocaine patch (id. at 1-2).

A court may consider developments that postdate the pleadings and motions when determining whether a prisoner is entitled to an injunction. Farmer v. Brennan, 511 U.S. 825, 846 (1994). Because the treatment that Plaintiff requested in his underlying motion for injunctive relief has now been provided, his request for an injunction is moot. Plaintiff's dissatisfaction with the efficacy of some of that treatment does not entitle him to additional relief. And Plaintiff's concerns over treatment for his high blood pressure and the stressors in his housing unit, as well as the alleged transportation violations, are unrelated to the original request for injunctive relief; thus, they will not be considered. Accordingly, Plaintiff's Motion for Reconsideration will be denied.

Within his briefing, Plaintiff moves for sanctions against Defendants for alleged fraud upon the Court (Doc. #129 at 5). A motion for sanctions pursuant to Rule 11 "must be made separately from any other motion and . . . must not be filed or presented to the court if the challenged paper . . . is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). Plaintiff failed to file his motion for sanctions separately from his motion for reconsideration; therefore, his request for sanctions will be denied.

Defense counsel is admonished that in the future, factual assertions must be supported with evidence or citations to the record, and he is reminded of his obligations under the Federal and Local Rules of Civil Procedure.

**IT IS ORDERED that** the reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Motion for Reconsideration (Doc. #129), and the Motion is **denied**.

DATED this 26th day of March, 2010.

_____
Mary H. Murguia
United States District Judge